**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Mojo Merger Sub, LLC,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 24-11989 (KBO) |
| Edgio Liquidating Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Flexential Corp.,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

The Edgio Liquidating Trust (the "Plaintiff" or "Trust"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Flexential Corp. (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that

[1] The reorganized debtor (the "Reorganized Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") is Mojo Merger Sub, LLC. In addition to Mojo Merger Sub, LLC, the Reorganized Debtor's affiliates include the following debtors (collectively, the "Debtors") whose bankruptcy cases have been closed prior to the date hereof, along with their chapter 11 case numbers: EdgeCast, Inc. (Case No. 24-11994); Edgio, Inc. (Case No. 24-11985); Edgio International, Inc. (Case No. 24-11986); Limelight Networks VPS, Inc. (Case No. 24-11988); Limelight Midco, Inc. (Case No. 24-11990); and Limelight Acquisition Co, Inc. (Case No. 24-11992). All motions, contested matters, and adversary proceedings that remained open as of the closing of such cases, or that are opened after the date thereof, with respect to such closed-case debtors, are administered in this remaining Chapter 11 Case.

occurred during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy proceedings pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or Reorganized Debtor, or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors or Reorganized Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying bankruptcy case is captioned *In re Mojo Merger Sub, LLC*, Case No. 24-11989 (KBO). [D.I. 1178].

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On September 9, 2024 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. On September 9, 2024, the Court entered an order directing the joint administration of the Debtors' chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [Case No. 24-11985, D.I. 33].[2]

9. On June 13, 2025, the Court entered an order (the "Confirmation Order") [Case No. 24-11985, D.I. 1061] confirming the *Joint Chapter 11 Plan of Reorganization of Edgio, Inc. and its Affiliated Debtors* [Case No. 24-11985, D.I. 958] (the "Plan"), together with all supplements and exhibits thereto, including the Liquidating Trust Agreement (the "Trust Agreement") [Case No. 24-11985, D.I. 1031-4, Ex. D].[3]

10. The effective date of the Plan (the "Effective Date") occurred on June 30, 2025. [Case No. 24-11985, D.I. 1101]. The Trust was established as of the Effective Date of the Plan pursuant to the Plan and Confirmation Order. META Advisors LLC was appointed as the Trustee of the Trust. *Id.*

11. Pursuant to paragraph 11 of the Confirmation Order and Section 5.8 of the Plan, as of the Effective Date, all Liquidating Trust Causes of Action (as defined in the Plan), including

---

[2] The Debtors' cases were jointly administered under the main case, *In re Edgio, Inc., et al.,* Case No. 24-11985 (KBO).

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Trust Agreement.

claims to avoid and recover property under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), were transferred to the Trust.

12. On August 21, 2025, the Debtors' cases were closed with the exception of the Reorganized Debtor's Chapter 11 Case. [D.I. 1178]. Notwithstanding the closed cases, Plaintiff retains the right to investigate, commence, pursue, institute, file, prosecute, enforce and settle the Avoidance Actions subject to the terms of the Trust Agreement. *Id.*

## THE PARTIES

13. Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff has the capacity, in its own right and name, to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve the Avoidance Actions, including this avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that was an information technology and data service company to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 7807 E. Peakview Ave, Suite 200, Centennial, CO 80111. Plaintiff is informed and believes, and on that basis alleges, that Defendant is a corporation residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

15. As more fully discussed in the *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Edgio, Inc. and Its Affiliated Debtors* (the "Disclosure Statement") [Case No. 24-11985, D.I. 852], the Debtors provided technology services to support the delivery of video and other content through the Internet via global computer networks that supported high-speed delivery of websites, recorded video, and live-streaming for a diverse group of businesses and

media customers, including entertainment, sports, retail, travel, hospitality and other digital media businesses.

16. Prior to the Petition Date, the Debtors ran over 300 server locations and leased space at various datacenters to house their equipment. The Debtors purchased and owned some of their hardware and servers, leased servers and equipment in other instances, and engaged hundreds of employees and service providers in dozens of countries, including research and development specialists and engineers to build and maintain their networks, as well as salespeople to market their services to customers.

17. The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Chapter 11 Case are set forth in Section III of the Disclosure Statement and are incorporated herein by reference.

18. As described in Article IV of the Plan and Section VI(C)(iv) of the Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

19. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, transfer, and disbursement of funds in the Debtors' business.[4] As of the Petition Date, the Cash Management System consisted of 42 bank accounts

---

4 *See Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing them to (A) Continue to Operate their Existing Cash Management System and Maintain Existing Bank Accounts, (B) Pay Related Fees and the Credit Card, (C) Utilize Existing Business Forms, and (D) Engage in Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Claims, (III) Extending the Time to Comply with Section 345(B) of the Bankruptcy Code and Waiving Certain of the U.S. Trustee's Operating Guidelines, and (IV) Granting Related Relief* (the "Cash Management Motion"), incorporated herein by reference [Case No. 24-11985, D.I. 10].

(the "Bank Accounts") at 9 different banks, including 7 accounts at First Citizens Bank & Trust Co., 27 accounts at Bank of America, N.A., and 8 additional standalone banks. Fourteen of the Bank Accounts were in the name of the Debtors, and 28 Bank Accounts were in the name of non-debtor subsidiaries.

20. Among these Bank Accounts, disbursements to vendors were made from the following accounts: Silicon Valley Bank Operating Account (-8491), Bank of America Operating Account (-4049) and a Silicon Valley Bank credit card (-9590) (collectively, the "Disbursement Accounts").

21. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including the Defendant.

22. During the ninety (90) days before the Petition Date, that is between June 11, 2024 and September 9, 2024 (the "Preference Period"), the Debtors operated their business affairs and transferred their property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise, to various entities.

23. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtors as described in the "Parties" section of this Complaint. The payments to Defendant in connection with the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

24. The Debtors made transfers of an interest in the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than the amount set forth on Exhibit A hereto (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include "Transfer Number," "Transfer Amount," "Clear Date," and "Debtor Transferor(s)."

25. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period.

26. On or about July 30, 2026, Plaintiff, through counsel, sent one or more demand letters (collectively, the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to the Defendant pursuant to section 547(c) of the Bankruptcy Code and requested that if Defendant has evidence to support any affirmative defenses, that it provide such evidence to Plaintiff for review.

27. Plaintiff also performed its own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $0.00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by Plaintiff, or ii)

Defendant successfully asserts affirmative defenses, including but not limited to the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to reduction.

28. Additionally, Plaintiff reviewed the books and records in Plaintiff's possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, Defendant may be able to assert the subjective ordinary course of business affirmative defense. However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor. The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and threats to stop shipments without payment, can make even statistically ordinary payments unordinary. Certain information related to these factors may only be in Defendant's possession, which Plaintiff is entitled to request during discovery. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

29. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

30. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right

to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

31. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

32. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $285,278.93.

33. Each Transfer was made from the Disbursement Account(s) described *supra* and constituted a transfer of an interest in property of the Debtor(s) identified on Exhibit A.

34. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

35. Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

36. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted

by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set for on Exhibit A hereto.

37. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

38. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

39. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

40. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

## COUNT II
## (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

41. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

42. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was incurred by one Debtor but paid for by another Debtor without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the

alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

43. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

44. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Third Claim for Relief.

45. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

46. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

47. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

**COUNT IV**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

48. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Fourth Claim for Relief.

49. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

50. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

51. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

52. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate

and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
September 3, 2026

**A.M. SACCULLO LEGAL, LLC**

*/s/ Mary Augustine*
Mark T. Hurford (DE No. 3299)
Mary Augustine (DE No. 4477)
27 Crimson King Drive
Bear, Delaware 19701
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
Email: mark@saccullolegal.com
meg@saccullolegal.com

*and*

**ASK LLP**
Kimberly Salomon, Esq.
2600 Eagan Woods Drive, Suite 400
St. Paul, Minnesota 55121
Telephone: (651) 406-9665
Facsimile: (651) 406-9676
Email: ksalomon@askllp.com

*Counsel for the Edgio Liquidating Trust*

Defendant: **Flexential Corp.**

Bankruptcy Case: **Edgio, Inc.**

Preference Period: **Jun 11, 2024 - Sep 9, 2024**

## Transfers During Preference Period

| Debtor Transferor(s) | Debtor(s) Incurring Antecedent Debt | Transfer Number | Transfer Amount | Clear Date | Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|---|---|---|---|---|
| Edgio, Inc. | Edgio, Inc. | 543 | $102,152.10 | 6/18/2024 | INV756823 | 3/10/2024 | $102,152.10 |
| Edgio, Inc. | Edgio, Inc. | 1447 | $95,332.14 | 7/29/2024 | INV760218 | 4/10/2024 | $95,332.14 |
| Edgio, Inc. | Edgio, Inc. | 1692 | $87,794.69 | 8/23/2024 | INV763714 | 5/10/2024 | $87,794.69 |

**Totals:** **3 transfer(s),** **$285,278.93**